34482. FIRST NATIONAL BANK OF ATLANTA, executor, *v.* DeLOACH.

Decided February 17, 1953.

*Phillips, Johnson & Williams,* for plaintiff in error.

*Poole, Pearce & Hall,* contra.

GARDNER, P. J. After careful consideration of the petition as twice amended and the law applicable thereto, we are of the opinion that the trial judge correctly overruled the demurrers, and that the petition set out a cause of action based on the contract between the plaintiff and his deceased wife. The agreement sued on was not void because contrary to public policy, as strenuously insisted by able counsel for the defendant executor, nor because to enforce this contract would be to cheapen, degrade, and render less sacred the matrimonial state—over which has always hovered a mantle of purity and holiness— which has been set apart in the minds and hearts of a Christian people as a union made holy and sacred by mutual love and respect when entered into, and which has never been looked upon by society as merely a legal contract in the strictly commercial sense. It is our opinion that the contract here sued on does not tend to cheapen and commercialize the marriage relationship and place the same upon a purely meretricious basis. This marriage relationship here had become seriously strained. Its harmonious continuance had been disrupted. It stood in immi-

nent danger of being permanently severed. The parties thereto had become estranged and, while they had not become legally parted by decree of divorcement, there was danger thereof. The plaintiff and his wife had separated and no longer lived under the same roof. The wife, being desirous of restoring the marital relationship—a worthy desire—before it should be entirely too late, made this agreement with the plaintiff, her husband, under which he was to return home and resume their cohabitation, and the wife was to leave her entire property to him. There was nothing illegal or contrary to public policy in this undertaling. The plaintiff performed his part, and the wife failed in her part of the agreement. It is possible that the wife would have changed her first will had she not passed away so soon after the parties had resumed their marital relationship. Who can say? She lived only a little more than five months after the contract was made. There is nothing unusual in the consideration. In this State, had she died without a will, the husband would have taken. Code, § 113-902. Furthermore, the husband alleged that substantially all of the property had been purchased with money which he had earned. It appeared that until their temporary estrangement the parties had lived together many years, presumably in a happy and blissful state. We cannot agree with counsel for the defendant executor that this contract to restore the marital relationship is void because against public policy. See generally, in this regard, *Banks* v. *Howard,* 117 *Ga.* 94 (43 S. E. 438), to the effect that agreements to make a will and leave property to another, in consideration of the other party performing some undertaking, which that person performs, have been upheld and enforced. *Gordon* v. *Spellman,* 145 *Ga.* 682 (89 S. E. 749); *Heery* v. *Heery,* 144 *Ga.* 467 (87 S. E. 472). "An agreement the object of which is to restore marital relations after a separation has taken place will generally be upheld." 17 C. J. S. 621, § 236; 13 C. J. 466, § 408. It is the policy of our law to declare agreements to sever the marriage relation invalid. *Ozmore* v. *Ozmore,* 179 *Ga.* 339 (3) (175 S. E. 789); *Birch* v. *Anthony,* 109 *Ga.* 349 (34 S. E. 561). This being so, it would seem that agreements to restore that relationship certainly ought not to contravene public policy of the State. See *Evans* v. *Hartley,* 57 *Ga. App.* 598, 601 (196 S. E. 273) and cit.

It follows that the petition as amended stated a cause of action, and that the court did not err in overruling the demurrers thereto.

*Judgment affirmed.* *Townsend and Carlisle, JJ., concur.*